# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00310-CV

**The State of Texas, Appellant**

**v.**

**$71,404.00 U.S. Currency, Appellee**

## FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
## NO. 18-1254-C395, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

## O P I N I O N

The State of Texas appeals from the district court's order granting a motion for new trial in a civil-asset-forfeiture case. In its sole issue on appeal, the State asserts that the district court erred in granting the motion for new trial because, in the State's view, the district court no longer had jurisdiction over the property that had been forfeited. We will affirm the district court's order.

## BACKGROUND

On September 26, 2018, during a traffic stop on a vehicle that belonged to Vicente Alonso-Carbajal, the State seized $71,404.00, believing it to be contraband that was subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 59.01–.14. The State subsequently charged Alonso-Carbajal with the offense of money laundering.

Alonso-Carbajal retained counsel to represent him in the criminal case. Although Alonso-Carbajal had not hired this counsel to represent him in the civil-forfeiture proceedings, this counsel filed an answer and general denial in response to the State's notice of seizure and intended forfeiture, as was this counsel's usual practice in cases involving the seizure of his client's property.

On February 13, 2019, the criminal case was scheduled for a plea hearing. The parties anticipated that at this hearing, Alonso-Carbajal would plead guilty to the money-laundering charges. Before the hearing began, Bridget Chapman, an attorney for the District Attorney's Office, presented to counsel a "Stipulated Forfeiture and Agreed Final Judgment," which ordered the forfeiture of the $71,404.00. Counsel signed the judgment, as did Chapman and the district court. Alonso-Carbajal was not present in the courtroom when counsel signed the judgment, and it is undisputed that counsel never discussed the judgment with his client and that Alonso-Carbajal had no knowledge that counsel had agreed to the forfeiture.

When the plea hearing began, the district court admonished Alonso-Carbajal of the possible immigration consequences of his guilty plea. At that point, Alonso-Carbajal announced that he no longer wanted to plead guilty and instead wanted to discuss his case with an immigration attorney. The criminal case was reset for March 26, 2019.

On February 26, 2019, pursuant to the terms of the Agreed Final Judgment, Ronnie Simek, the Financial Administrator for the District Attorney's Office, instructed the Williamson County Treasurer to withdraw the forfeited funds from the District Attorney's interest-bearing "TexPool Account" and deposit the funds into the District Attorney's "Chapter 59 Account" for disbursement to local law-enforcement agencies, in accordance with the requirements of Chapter 59. *See id*. art. 59.06. On February 27, Simek disbursed the funds to

2

the Williamson County District Clerk, the Williamson County Constable Precinct 3, the Williamson County Sheriff, and the Williamson County District Attorney, in accordance with local agreements relating to the disbursement of forfeited funds.[1] *See id.*

Meanwhile, Alonso-Carbajal had hired new counsel to represent him. This counsel informed Alonso-Carbajal that his $71,404.00 had been forfeited pursuant to the agreed judgment. On March 8, 2019, within 30 days after the judgment had been signed, Alonso-Carbajal filed a motion for new trial, asking the district court to vacate the judgment because Alonso-Carbajal had not authorized his former counsel to sign it. The State filed a response in opposition, arguing that because the State had disbursed the forfeited funds, the district court had lost jurisdiction to grant a new trial. Following a hearing, the district court concluded that because the motion for new trial had been filed within 30 days from the entry of the judgment, the court "continue[d] to have jurisdiction to deal with this property." The court then granted the motion for new trial and set aside the judgment, ordering that the funds be returned to the District Attorney's "TexPool Account." This appeal by the State followed.

**ANALYSIS**

In its sole issue on appeal, the State asserts that the district court erred in granting a new trial because the district court had lost jurisdiction over the forfeited funds after they were disbursed by the State. "Subject matter jurisdiction is a question of law that we review de novo." *Harris County v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004)).

---

[1] Specifically, the record reflects that the total amount of $72,138.37 ($71,404.00 plus earned interest) has been disbursed as follows: (1) $283.00 to the Williamson County District Clerk; (2) $70.00 to the Williamson County Constable Precinct 3; (3) $57,357.70 to the Williamson County Sheriff; and (4) $14,427.67 to the Williamson County District Attorney.

Forfeiture proceedings in Texas, although governed by the Code of Criminal Procedure, "are distinctly civil in nature." *State v. One (1) 2004 Lincoln Navigator*, 494 S.W.3d 690, 693 (Tex. 2016); *see State v. Rumfolo*, 545 S.W.2d 752, 754 (Tex. 1976); *see also* Tex. Code Crim. Proc. art. 59.05(a) ("All parties must comply with the rules of pleading as required in civil suits."), (b) ("All cases under this chapter shall proceed to trial in the same manner as in other civil cases."). Accordingly, the Rules of Civil Procedure apply to forfeiture proceedings. *Three Thousand Six Hundred Thirty-Nine Dollars in U.S. Currency v. State*, 133 S.W.3d 698, 700 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *F&H Invs., Inc. v. State*, 55 S.W.3d 663, 668 (Tex. App.—Waco 2001, no pet.); *Fleming v. State*, 704 S.W.2d 530, 531 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The Rules of Civil Procedure provide that "[a] trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000) (citing Tex. R. Civ. P. 329b(d)). During this time, the trial court retains jurisdiction to grant a new trial or to vacate, modify, correct, or reform its judgment. *See* Tex. R. Civ. P. 329b(d); *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex. 1988). This time period "may be extended, however, by timely filing an appropriate post-judgment motion." *Lane Bank Equip. Co.*, 10 S.W.3d at 310. Thus, the timely filing of a motion for new trial "within the initial thirty-day period extends the trial court's jurisdiction over its judgment up to an additional seventy-five days, depending on when or whether the court acts on the motions." *Id.* (citing *Philbrook v. Berry*, 683 S.W.2d 378, 379 (Tex. 1985); Tex. R. Civ. P. 329b(c)).

Here, the judgment was signed on February 13, 2019. Alonso-Carbajal filed his motion for new trial on March 8, 2019, within thirty days after the judgment was signed. The

4

district court heard and granted the motion for new trial on April 11, 2019, within the period of its plenary jurisdiction. *See* Tex. R. Civ. P. 329b(a), (c), (e). Accordingly, the district court retained jurisdiction at that time to set aside its judgment and grant the motion for new trial.

In arguing that the district court lost jurisdiction to grant a new trial, the State relies on cases holding that because civil-forfeiture actions are *in rem* proceedings against contraband, "[t]he trial court's jurisdiction depends on its control over the property," and thus "[t]he release or removal of the property from the control of the court will terminate the court's jurisdiction over the property," unless the property was released "accidentally, fraudulently, or improperly." *State v. Thirty Thousand Six Hundred Sixty Dollars*, 136 S.W.3d 392, 405 (Tex. App.—Corpus Christi 2004, pet. denied) (en banc); *State v. Approximately $2,000,000.00 in U.S. Currency*, 822 S.W.2d 721, 726 (Tex. App.—Houston [1st Dist.] 1991, no writ); *Costello v. State*, 774 S.W.2d 722, 723 (Tex. App.—Corpus Christi 1989, writ denied).

The case before us is distinguishable from the cases on which the State relies, none of which address a trial court's jurisdiction to grant a new trial under Rule 329b. In *Thirty Thousand Six Hundred Sixty Dollars*, the trial court found that the currency subject to forfeiture was seized illegally, ordered it returned to the owner, and then dismissed the case for lack of jurisdiction. 136 S.W.3d at 396. The appellate court affirmed the trial court's order, concluding that the currency was seized illegally, that it was thus proper for the trial court to return the currency, and that once the currency was returned to its owner, the trial court lost jurisdiction to continue the State's forfeiture action. *See id.* at 403, 405–06.

In *Approximately $2,000,000.00 in U.S. Currency*, the State filed a forfeiture action against currency. 822 S.W.2d at 723. Later, the State moved for nonsuit and the trial court granted and signed the order of nonsuit, without specifying the disposition of the currency.

5

*Id.* Within 24 hours of the judge's signature on the nonsuit, and without notice to the trial court or the owner, the State disbursed the funds to the U.S. Customs Service. *Id.* Upon request of the owner, the trial court amended its order of nonsuit and ordered the currency returned to the owner, and the State appealed. *Id.* The appellate court affirmed the trial court's amended order, concluding that because "[t]he State chose to transfer the money before the order of nonsuit was final and before the trial court had lost jurisdiction," the disbursement was improper and did not divest the trial court of jurisdiction to amend the order of nonsuit. *Id.* at 726–27; *see also State v. $13,845.00 in U.S. Currency*, No. 14-12-00304-CV, 2013 Tex. App. LEXIS 2438, at *7–9 (Tex. App.—Houston [14th Dist.] Mar. 12, 2013, no pet.) (mem. op.) (similarly concluding that because State improperly released forfeited currency to federal government while forfeiture action remained pending, trial court retained *in rem* jurisdiction over currency).

In *Costello*, the issue was whether the appellate court lacked jurisdiction over forfeited property. *See* 774 S.W.2d at 723. The State had initiated a forfeiture action against a vehicle owned by Costello and, after a bench trial, the trial court released the vehicle to the Nueces County Sheriff's Office, which sold the vehicle at auction. *Id.* Costello filed a notice of appeal from the trial court's judgment. *Id.* The State filed a motion to dismiss, arguing that the sale of the vehicle rendered the appeal moot. *Id.* The appellate court agreed and dismissed the appeal, concluding that the owner was required to file a supersedeas bond to suspend enforcement of the judgment *on appeal*, and because Costello failed to do so, the State was "free to execute the judgment" while the appeal was pending. *Id.* at 724; *see also* Tex. R. App. P. 24 (providing for suspension of enforcement of judgment pending appeal).

We are not persuaded that we should follow these cases here. In addition to the procedural distinctions between this case and the cases cited by the State, the State's cases rely

on a federal rule that the United States Supreme Court has repudiated. In *Republic National Bank v. United States*, the federal government instituted a forfeiture action against a single-family residence in Florida. 506 U.S. 80, 82–83 (1992). Republic National Bank (the Bank) asserted a claim on the property, which was sold for $1,050,000. *Id*. Following a trial, the U.S. District Court ordered the proceeds of the sale forfeited to the United States Government. *Id*. at 83. The Bank filed a notice of appeal but did not post a supersedeas bond or seek to stay the execution of the judgment. *Id*. While the appeal was pending, the United States Marshal transferred the sale proceeds to the Assets Forfeiture Fund of the United States Treasury. *Id*. The Government then moved to dismiss the Bank's appeal for want of jurisdiction. *Id*. at 83. The Eleventh Circuit granted the motion and dismissed the appeal, holding that the removal of the proceeds of the sale of the residence terminated the District Court's *in rem* jurisdiction. *Id*.

The United States Supreme Court reversed, rejecting the Government's contention "that jurisdiction over an *in rem* forfeiture proceeding depends upon continued control of the res." *Id*. at 84. The Court, after reviewing the cases on which the Government relied, concluded that "[t]he rule invoked by the Government . . . does not exist, and we see no reason why it should." *Id*. at 87. The Court explained that although "a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding," *id*. at 84 (emphasis in original), continued possession of the property is not required to sustain the court's jurisdiction, *id*. at 85. The Court reasoned that "[t]he fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties, not to provide a prevailing party with a means of defeating its adversary's claim for redress." *Id*. at 87 (internal citations omitted). The Court added, "Stasis is not a general prerequisite to the maintenance of jurisdiction. Jurisdiction over the person survives a change in circumstances, as does jurisdiction

7

over the subject matter. Nothing in the nature of *in rem* jurisdiction suggests a reason to treat it differently." *Id*. at 88 (internal citations omitted). Accordingly, the Court held that "in an *in rem* forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." *Id*.

The Court observed that "in some cases there might be an exception to the rule, where the release of the property would render the judgment 'useless' because 'the thing could neither be delivered to the libellants, nor restored to the claimants.'" *Id*. at 85 (quoting *United States v. Little Charles*, 26 F. Cas. 979, 982 (No. 15,612) (C.C. Vir. 1818)). For example, "if a 'defendant ship stealthily absconds from port and leaves the plaintiff with no res from which to collect,' a court might determine that a judgment would be 'useless.'" *Id*. at 87 (internal citations omitted). However, "this exception 'will not apply to any case where the judgment will have any effect whatsoever.'" *Id*. at 85. "A judgment is useless only if there is no chance that it will provide 'concrete value' to the successful litigant." *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 (5th Cir. 2010) (quoting *Elliott v. M/V Lois B*, 980 F.2d 1001, 1005 (5th Cir. 1993)); *see Newpark Shipbuilding & Repair v. M/V Trinton Brute*, 2 F.3d 572, 573 (5th Cir. 1993) (concluding that useless-judgment exception applied to forfeited vessel because vessel had been purchased without money changing hands and was "no longer the res"; court could not "trace the res or its proceeds to a particular fund in [plaintiff's] possession").

We cannot conclude on this record that the "useless judgment" exception, to the extent that it applies at all to forfeiture proceedings in Texas state courts, would apply to the facts here. The record reflects that the forfeited funds can be traced to four agencies within Williamson County: the Williamson County District Clerk, the Williamson County Constable Precinct 3, the Williamson County Sheriff, and the Williamson County District Attorney.

8

Nothing in the record indicates that the funds are no longer available at those agencies or that they cannot be returned to the District Attorney's "TexPool Account" as ordered by the district court.[2] *See Republic Nat'l Bank*, 506 U.S. at 92–93; *Elliot*, 980 F.2d at 1005; *see also Hoog v. State*, 87 S.W.3d 740, 742–43 (Tex. App.—San Antonio 2002, no pet.) (concluding that useless-judgment exception did not apply in forfeiture action against cattle that had been sold at auction because proceeds of auction remained available).

For the above reasons, we conclude that the district court retained jurisdiction to grant a new trial within the time period allowed by Rule 329b. We overrule the State's sole issue on appeal.

**CONCLUSION**

We affirm the district court's order granting a new trial.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed: December 31, 2019

---

[2] The State represents in its reply brief that "the Williamson County District Attorney has voluntarily set aside the amount disbursed to [its] office, pending resolution of this matter." Thus, at a minimum, the $14,427.67 that remains in the possession of the District Attorney's Office should be available for immediate transfer.